**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Russell Lee Frigon,

     Plaintiff,

v.

Carolyn W. Colvin,

     Defendant.

No. CV-15-00269-PHX-DGC

**ORDER**

  Plaintiff Russell Lee Figon seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied him disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act.  Because the decision of the Administrative Law Judge ("ALJ") is generally supported by substantial evidence and not based on legal error, the decision will be generally affirmed.  Because the ALJ entirely failed to address one issue, however, the Court will remand for further proceedings on that issue.

**I. Background.**

  Plaintiff is a 52 year old male who previously worked as a hair stylist and retail store manager.  A.R. 29.  On September 21, 2011, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning May 15, 2011.  A.R. 18.  On October 1, 2013, he appeared with his attorney and testified at a hearing before an ALJ.  *Id.*  A vocational expert also testified.  *Id.*  On October 31, 2013, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the

Social Security Act.  A.R. 18.  The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. *See* A.R. 1.

## II.    Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence.  *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in the Social Security Act context.  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination.  *Id.*  The claimant usually bears the burden of showing that an error is harmful.  *Id.* at 1111.

## III.   The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not

disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012, and that he had not engaged in substantial gainful activity during the period from his alleged onset date through his date last insured. A.R. 20. At step two, the ALJ found that Plaintiff had the following severe impairments: Human Immunodeficiency Virus ("HIV"), degenerative disc disease of the cervical spine, and arthritis. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. A.R. 23. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform the full range of light work (as defined in 20 C.F.R. § 404.1567(b)), including his past relevant work as a hair stylist or store manager. A.R. 23, 29. The ALJ did not reach step five.

**IV.    Analysis.**

Plaintiff argues the ALJ's disability determination was defective for two reasons: (1) the ALJ improperly rejected the medical opinions of Plaintiff's medical sources, and

(2) the ALJ erred in failing to consider Reiter's Syndrome as a severe impairment.  The Court will address each argument below.

### A.    Weighing of Medical Source Evidence.

Plaintiff argues that the ALJ improperly discounted the medical opinions of Dr. Drew A. Kovach, Dr. Thanes Vanig, and Dr. Brent B. Geary.

### 1.    Legal Standard.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work."   20 C.F.R. § 416.927(d).   But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do despite the impairments, and the claimant's physical or mental restrictions. § 416.927(a)(2).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician.  *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citation omitted).  Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole[] or by objective medical findings," *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004), or if there are significant discrepancies between the

physician's opinion and her clinical records.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record."  *Lester*, 81 F.3d at 830-31 (citation omitted).  This standard requires the ALJ to set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).  Under either standard, "[t]he ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### 2.    Drew A. Kovach, M.D.

Dr. Kovach has treated Plaintiff for HIV since June 2003, consulting with Plaintiff every three to four months.  A.R. 895.  On November 3, 2011, Dr. Kovach completed two medical evaluations.  In the first, Dr. Kovach indicated that Plaintiff suffered from Acquired Immune Deficiency Syndrome (AIDS), diarrhea, fatigue, depression, and anxiety, and that these conditions produced symptoms including physical weakness, decreased muscle strength, and decreased sensation in his hands.  A.R. 895-96.  Dr. Kovach stated that Plaintiff was limited to walking one city block at a time, sitting for thirty minutes at one time, standing for forty-five minutes at a time, sitting for a total of less than two hours in an eight hour day, standing and walking for less than two hours in an eight hour day, and reaching, handling, and fingering less than ten percent of the day. A.R. 896-97.  Dr. Kovach further opined that Plaintiff would need a job that permitted him to walk around every ninety minutes for at least fifteen minutes, to elevate his feet above the heart with prolonged sitting, to shift positions at will, to use a cane to stand and walk, and to take four unscheduled breaks during the day.  A.R. 897.

/ / /

/ / /

In his second evaluation, Dr. Kovach reported that Plaintiff suffered from several additional conditions, including HIV Wasting Syndrome,[1] diarrhea lasting for over one month,[2] and HIV Encephalopathy characterized by cognitive dysfunction.  A.R. 901.  Dr. Kovach opined that Plaintiff suffered marked limitations of daily living, marked difficulties in maintaining social functioning, and marked difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.  A.R. 902.

The ALJ concluded that Dr. Kovach's evaluations were entitled to "no weight." A.R. 27.  The ALJ found the evaluations to be "wildly exaggerated" and "inconsisten[t] with the last three years of the claimant's treatment and the claimant's report of daily activities."  A.R. 28.  The ALJ stated that the evaluations were inconsistent with Plaintiff's unremarkable blood work, stable viral load, and report of daily activities.  *Id.* The ALJ also found discrepancies between the evaluations and Dr. Kovach's clinical records, including notes for Plaintiff's October 27, 2011 consultation stating that Plaintiff had "no complaints" and "no health concerns at the present time," *id.* (citing A.R. 349), and notes from Plaintiff's May, 16, 2011 consultation stating that Plaintiff had no complaints, no abdominal pain, and no change in bowel habits or consistency, A.R. 24 (citing A.R. 352).  Finally, the ALJ found that Dr. Kovach's opinion was contradicted by two medical consultants for the Arizona Office of Disability Determination Services ("DDS") – Dr. Mikhail Bargan, a non-examining physician, and Dr. Galluci, a non-examining psychologist.  *See* A.R. 28, 27; *see also* A.R. 119 (opinion of Dr. Gargan), A.R. 101-02 (opinion of Dr. Galluci).

---

[1] The evaluation defined this condition as "characterized by involuntary weight loss of ten percent or more of baseline (or other significant involuntary weight loss) and, in the absence of a concurrent illness that could explain the findings, involving: chronic diarrhea with two or more loose stools daily lasting for one month or longer; or chronic weakness and documented fever greater than 38°C (100.4°F) for the majority of one month or longer."  A.R. 901.

[2] The evaluation defined this condition as "[d]iarrhea, lasting for one month or longer, resistant to treatment, and requiring intravenous hydration, intravenous alimentation, or tube feeding."  A.R. 901.

Because Dr. Kovach's medical opinion was contradicted by another doctor, the Court must determine whether the ALJ offered "specific and legitimate" reasons for rejecting Dr. Kovach's medical opinion.[3]   Under this standard, the ALJ can reject a treating or examining physician's opinion if there are significant discrepancies between the physician's opinion and his or her clinical records.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  The ALJ reasonably concluded that such discrepancies are present here.  For example, although Dr. Kovach indicated in his second evaluation that Plaintiff suffered from HIV Wasting Syndrome, diarrhea lasting for over one month, and HIV Encephalopathy characterized by cognitive dysfunction, Dr. Kovach's clinical notes contain no mention of these conditions.  *See* A.R. 349 (Oct. 27, 2011) (listing Plaintiff's diagnoses as AIDS and depression); A.R. 351 (May 16, 2011) (listing Plaintiff's diagnoses as AIDS and alopecia).  Instead, these notes indicate that Plaintiff's most recent physical exam was "generally normal," A.R. 352, and that Plaintiff had "no health concerns" other than "depressive symptoms" as of October 27, 2011, less than a week before Dr. Kovach completed his medical opinions.  A.R. 349.  *See also* A.R. 352 (reporting no change in weight, no abdominal pain or change in bowel habits or consistency, and "no health concerns" as of May 2011).  Because the ALJ identified significant discrepancies between Dr. Kovach's medical opinion and his clinical records, the ALJ had specific and legitimate reasons for rejecting that opinion.

### 3.      Thanes Vanig, M.D.

Dr. Vanig has treated Plaintiff since August 2011.  A.R. 874.  On July 17, 2012, Dr. Vanig completed a medical evaluation.  A.R. 966-68.  Dr. Vanig's findings were almost identical to those included in Dr. Kovach's second evaluation.  Like Dr. Kovach, Dr. Vanig found that Plaintiff suffered from HIV Wasting Syndrome, diarrhea lasting for over one month, and HIV Encephalopathy characterized by cognitive dysfunction.  A.R. 967.  Dr. Vanig also reported that Plaintiff suffered marked limitations of daily living,

---

[3] Plaintiff does not dispute that the "specific and legitimate reasons" test applies to Dr. Kovach's opinion.  *See* Doc. 12 at 10.

marked difficulties in maintaining social functioning, and marked difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. A.R. 968. Finally, Dr. Vanig indicated that Plaintiff suffered severe diarrhea that affected Plaintiff on a daily basis over the course of a year, and severe fatigue that affected Plaintiff on a daily basis over the course of a year. *Id.*

The ALJ concluded that Dr. Vanig's evaluation was entitled to "no weight." A.R. 27. The ALJ provided the following explanation for discounting Dr. Vanig's opinion:

> Dr. Vanig's indication that the claimant has severe diarrhea daily is inconsistent with Dr. Vanig's own treatment notes, as Dr. Vanig noted the claimant as "negative for abdominal pain, abdominal bleeding, diarrhea, heartburn, nausea, and vomiting" in January, February, and June of 2012 . . . In fact, Dr. Vanig provided in August 20, 2011, that the claimant was asymptomatic at the time of his diagnosis with HIV, "has never had any opportunistic infections," sustained an undetectable viral load," and was also "negative for abdominal pain, abdominal bleeding, diarrhea, heartburn, nausea and vomiting" . . . Therefore, this opinion appears to reflect a sympathetic treatment provider, and is clearly not an objective assessment of claimant's functional capacity.

A.R. 28 (citations omitted).

Neither the ALJ nor the Commissioner contends that Dr. Vanig's medical opinion is contradicted by another examining or treating physician. Therefore, the Court must determine whether the ALJ offered "clear and convincing" reasons for rejecting Dr. Vanig's opinion.

Significant discrepancies between the physician's opinion and his or her clinical records constitute a clear and convincing reason to reject the physician's opinion. *See Bayliss*, 427 F.3d at 1216. The ALJ reasonably determined that such discrepancies were present here. Dr. Vanig's clinical records indicate that Plaintiff was negative for abdominal pain and diarrhea as of his consultations on August 30, 2011, and on January 24, January 27, and April 17, 2012. *See* A.R. 874, 972, 977, 975. Dr. Vanig's report for Plaintiff's July 16, 2012 consultation does list chronic diarrhea as among Plaintiff's conditions. *See* A.R. 988. Even so, the ALJ reasonably concluded that Dr. Vanig's negative finding for diarrhea in the four prior consultations undermined his conclusion

that Plaintiff was likely to experience severe diarrhea on a "daily" basis over the course of a one-year period.[4]  In light of the discrepancy between Dr. Vanig's opinion and his clinical records on Plaintiff's diarrhea, the ALJ had clear and convincing reasons for rejecting that aspect of Dr. Vanig's opinion.

The ALJ failed, however, to provide any reason for rejecting Dr. Vanig's medical opinion concerning the severity of Plaintiff's fatigue.  Although the ALJ stated that "[Plaintiff's] fatigue . . . is not supported anywhere in the record," A.R. 27, Dr. Vanig diagnosed Plaintiff with this condition on at least four occasions.  *See* A.R. 972 (Jan. 24, 2012), A.R. 977 (Jan. 27, 2012), A.R. 975 (Apr. 17, 2012), A.R. 988 (July 16, 2012, describing Plaintiff's fatigue as "severe").[5]  Because the ALJ overlooked this evidence, he entirely failed to address it in discussing Dr. Vanig's opinion.  That fact precludes the Court from affirming the ALJ's decision to reject Dr. Vanig's opinion entirely.

Even if Dr. Vanig's opinion regarding Plaintiff's fatigue is credited as true, it is unclear from the administrative record that Plaintiff is disabled.  Plaintiff did not specifically ask about the limiting effect of fatigue in his cross-examination of the Social Security Administration's vocational expert, *see* A.R. 70-80, and the Court therefore is unable to determine from the record whether there is some work Plaintiff could perform despite his fatigue.  In addition, the Court is unable to determine whether Plaintiff's battle with methamphetamine addiction during the period relevant to this case contributed to his fatigue.  If it did, Plaintiff might be ineligible for disability insurance despite suffering debilitating symptoms.  *See* 20 C.F.R. § 404.1535.  In light of these sources of uncertainty, the Court will remand for further proceedings to address Plaintiff's fatigue.

---

[4] Furthermore, Dr. Vanig's clinical records fail to support his conclusion that Plaintiff's diarrhea was "resistant to treatment" and requiring of "intravenous hydration, intravenous alimentation, or tube feeding."  A.R. 968.

[5] Dr. Vanig's clinical records from 2013 indicate that Plaintiff continued to suffer severe fatigue after the expiration of his coverage.  *See* A.R. 1001 (Jan. 16, 2013), A.R. 1004 (May 6, 2013), A.R. 1007 (May 22, 2013).

### 4.      Brent B. Geary, Ph.D.

On March 9, 2012, Dr. Geary conducted a psychological evaluation of Plaintiff and diagnosed him with moderate, chronic adjustment disorder with depressed mood. A.R. 910-14.  Shortly thereafter, Dr. Geary completed a medical source statement based on the evaluation.  A.R. 915.  The statement indicated that Plaintiff's psychological condition imposed limitations that could be expected to last twelve continuous months from the date of the exam.  *Id.*  According to the statement, Plaintiff's conditions significantly limited his mental energy and stamina.  *Id.*  As a result, Plaintiff "would require frequent breaks" and "would tend to fall behind in execution of duties."  *Id.*

The ALJ concluded that Dr. Geary's medical opinion was entitled to "[l]ittle weight."  A.R. 27.  The ALJ explained that Dr. Geary was unable to accurately assess Plaintiff's psychological condition because Plaintiff misrepresented his history of substance abuse.  *Id.*  The administrative record indicates that Plaintiff commenced inpatient treatment for methamphetamine dependence in September 2011, at which time he indicated that he was unable to control his use, that he had started using eight years prior, and that his last use was "yesterday."  A.R. 882-83.  Although Plaintiff had been discharged from inpatient treatment the previous month, he failed to mention this treatment in his consultation with Dr. Geary, reporting instead that his last use of methamphetamine was "quite a while ago."  A.R. 912.

Neither the ALJ nor the Commissioner contends that Dr. Geary's medical opinion is contradicted by another examining or treating psychologist.  Therefore, the Court must determine whether the ALJ offered "clear and convincing" reasons for rejecting Dr. Kovach's opinion.

In determining how much weight to accord a medical source opinion, the ALJ may consider "the extent to which [the] medical source is familiar with the other information in [the claimant's] record."   20 C.F.R. § 404.1527(c)(6).   Because Dr. Geary was unaware of information that was plainly relevant to the question upon which he opined, the ALJ provided a clear and convincing reason for according his opinion little weight.

**B.      Determination of Plaintiff's Severe Impairments.**

Plaintiff's final contention is that the ALJ erred by failing to list Reiter's Syndrome as a severe impairment.[6]  Plaintiff argues that this error was harmful because the "ALJ use[d] the absence of findings and treatment for traditional arthritis in order to make a negative and misguided finding of [Plaintiff's] symptoms."  Doc. 17 at 6 (citing A.R. 26).  In particular, Plaintiff asserts that the ALJ's misunderstanding caused the ALJ to draw improper inferences from Plaintiff's failure to meet with a specialist for pain or obtain injections for pain.  *Id.*

The Commissioner notes that the ALJ did list "arthritis" as a severe impairment. Doc. 16 at 15 (citing A.R. 20).  She contends that this listing necessarily encompassed Reiter's Syndrome and other forms of reactive arthritis.  *Id.*  The Commissioner further argues that any error was harmless, as Plaintiff has not identified any specific limitations that were excluded from the residual functional capacity finding as a result of the ALJ's failure to specifically address Plaintiff's Reiter's Syndrome.  *Id.*

The Commissioner has the better of the argument.  Plaintiff has the burden of showing that the ALJ's alleged error was harmful – that it affected the ultimate disability determination.  *See Molina*, 674 F.3d at 1111.  Plaintiff has not borne this burden.  Even assuming that the ALJ drew improper inferences from Plaintiff's failure to seek certain treatment for pain, these inferences were not central to the ALJ's reasoning.  The ALJ relied most heavily on evidence indicating that Plaintiff's joint pain and swelling were not severe enough to be considered debilitating.  *See* A.R. 25-26 (explaining that Plaintiff's x-ray results "reveal no fractures and no erosions or evidence of inflammatory arthropathy in his bilateral hands"); A.R. 26 ("objective scans of [Plaintiff's] hands, feet, knees, and spine reveal largely no remarkable findings other than mild to moderate degeneration in his lumbar spine"); *id.* (explaining that examining physician reported

---

[6] Reiter's Syndrome is a type of reactive arthritis characterized by inflammation that typically affects the eyes and urethra, as well as the joints.  *See* Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/reactive-arthritis/basics/definition/con-20020872 (last visited October 1, 2015).  Reactive arthritis is characterized by joint pain and swelling triggered by an infection elsewhere in the body.  *Id.*

"full function 5/5 grip strength, normal gait, [and] normal range of motion in his lower and upper extremities bilaterally").   Because Plaintiff has not shown that the ALJ's central findings were undermined by the ALJ's failure to specifically address Plaintiff's Reiter's Syndrome, Plaintiff has not demonstrated that the ALJ committed harmful error.

IT IS ORDERED that the final decision of the Commissioner of Social Security is **remanded** for further proceedings consistent with this opinion.   The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 16th day of October, 2015.

David G. Campbell
United States District Judge